# IN THE COURT OF APPEALS OF IOWA

No. 19-0233
Filed May 1, 2019

**IN THE INTEREST OF B.P.,**
**Minor Child,**

**K.D., Mother,**
    Appellant,

**J.M., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A father and mother appeal separately from the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Michael Lanigan, Waterloo, for appellant mother.

Joseph G. Martin, Cedar Falls, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Mark Milder, Waverly, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A father, James, and a mother, Karmen, separately appeal the termination of their parental rights to their eight-year-old child, B.P. They both contend rather than terminating their rights, the juvenile court should have established a guardianship with B.P.'s current placement, his maternal aunt. Karmen further contends the State did not offer clear and convincing evidence she was "unable to care for the child." After an independent review,[1] we reach the same conclusions as the juvenile court: terminating parental rights is proper and establishing a guardianship is not the preferred outcome for B.P.

## I.      Facts and Prior Proceedings

B.P. came to the attention of the Iowa Department of Human Services (DHS) three years ago because of Karmen's methamphetamine use and the domestic violence he witnessed in his home. At that time, B.P. lived with his mother, Karmen; his stepfather, David; and his older half-sister, T.D. The juvenile court approved removal of both children in April 2016.

B.P.'s biological father, James, has had only sporadic contact with him since his birth in 2011. James has not seen B.P. since February 2016. James also has a significant history of substance abuse and a lengthy criminal record, including convictions for domestic-abuse assault.

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although we are not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* Evidence must be clear and convincing to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence is clear and convincing when there are no serious or significant doubts as to the correctness of conclusions of law drawn from the evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The child's best interests are our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

Following DHS intervention, James and Karmen failed to comply with the court's expectations regarding their substance-abuse testing and treatment. Karmen missed or refused many drug tests. James did not have stable housing or employment and was incarcerated for thirteen months during these proceedings. At the termination hearing, the DHS worker testified B.P. has little or no bond with James. The DHS worker also testified B.P. displays concerning behavioral issues—including excessive aggression—attributable to the instability of his parents and home life.

Early in the child-in-need-of-assistance (CINA) proceedings, the DHS placed B.P. and T.D. with David. But the court ordered B.P.'s removal from that home due to domestic violence. After a short stint with a foster family, B.P. was placed in the care of his maternal aunt, Brandy, who lives in South Carolina. T.D.—who is three years older than B.P.—remained in Iowa. The siblings' separation has been difficult for both children as they share a strong bond. They have stayed in touch by "FaceTime" and phone calls.

By the time of the termination hearing, B.P. had lived with Brandy in South Carolina for one year. The aunt, who wishes to adopt B.P., reported he was thriving but still anxious about where he would live permanently.

The court terminated both James's and Karmen's parental rights. They appeal.

## II.    Analysis

### A.  Mother's Contention—Statutory Ground

Karmen raises two claims: (1) the State did not prove the statutory grounds for termination; and (2) the court did not consider whether a guardianship was in

B.P.'s best interests. As James raises the same guardianship issue, we will address it below.[2]

The juvenile court terminated Karmen's parental rights based on Iowa Code section 232.116(1), paragraphs (e), (f), and (*l*). When the court relies on more than one statutory ground, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Karmen argues the State did not prove by clear and convincing evidence "she was unable to care for the child." Trouble is, this language does not appear in section 232.116(1). When a parent does not refer to the specific statutory ground being challenged, we are unable to address the claim on appeal. *See, e.g.*, *In re L.M.*, 904 N.W.2d 835, 839 n.7 (Iowa 2017); *M.W.*, 876 N.W.2d at 222; *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *C.B.*, 611 N.W.2d at 492; *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014); *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). By not identifying a specific statutory ground, Karmen has waived her sufficiency challenge.

And if waiver was not an impediment, we would affirm the termination under paragraph (f): B.P. is older than four years of age; has been adjudicated a CINA; has been removed from Karmen's physical custody for two years—well beyond the statutory requirement; and cannot be returned to her care at the present time. *See* Iowa Code § 232.116(1)(f); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting statutory language "at the present time" to mean the time of termination hearing).

---

[2] James does not contest the juvenile court's findings that the grounds for termination of his rights have been met. *See* Iowa Code § 232.116(1)(e), (f) (2018).

Karmen did not comply with the court's expectations as to her drug testing and treatment. Although she sometimes engaged with substance-abuse services, she repeatedly cancelled or failed to appear and did not successfully complete any treatment. She complains the court focuses too narrowly on these issues and she highlights her recent success in finding full-time employment and maintaining a residence. But her drug use prompted B.P.'s original removal. And Karmen has not demonstrated a long-term commitment to sobriety. She tested positive for methamphetamine several times during the CINA case while denying use. The DHS could not recommend unsupervised visitations with B.P. because of drug-related safety concerns. While Karmen's recent achievements are commendable, the danger that B.P. would be subject to the same adjudicatory harm remains.

Beyond the statutory elements, Karmen resurrects a parity argument she advanced at the termination hearing, contending termination of her parental relationship with B.P. is inconsistent with her "joint custody and visitation rights" as to his half-sister, T.D. At the termination hearing, the DHS worker testified T.D. was in David's care and the worker continued to supervise her case under a permanency order. But regardless of T.D.'s situation, we must judge B.P.'s safety and welfare independently based on the applicable law, including statutory timelines. B.P.'s two years out of Karmen's care far exceeds the statutory benchmarks. Moving him toward permanency will further his long-term nurturing and growth. *See* Iowa Code § 232.116(2).

**B. Both Parents' Contention—Guardianship**

Karmen and James both fault the juvenile court for not establishing a guardianship for B.P. They assert a guardianship would achieve the same result

for their son as termination of their rights and adoption. We disagree. "[G]uardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). We are primarily concerned with B.P.'s safety and need for a permanent home. *See A.B.*, 815 N.W.2d at 776 (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially)). A child in a guardianship remains in flux because the parents can eventually petition for its closing. *See, e.g.*, Iowa Code §§ 232.104, 633.675. A guardianship is not permanent, and B.P. would not experience the certainty of adoption. We agree with the juvenile court's sound analysis on this point:

> Both parents request that guardianship of the child be placed with Brandy . . . so that they can demonstrate their sobriety, stability and ability to meet the child's needs. This court finds that guardianship is not in the child's best interests, based upon the parents['] past performance neither is willing or capable of making the necessary long-term changes in their life to parent the child. [B.P.] has waited over two years for Karmen . . . and James . . . to make the changes that would allow the child to return to their care. Neither parent has chosen to make those changes. The child's behaviors have significant[ly] deteriorated as a result of his lack of permanency and confusion as to where [he] will grow up. The child's safety can best be ensured by a termination of parental rights.

B.P.'s home is now in South Carolina with his aunt, Brandy. The parents did not present evidence suggesting Brandy would be willing to remain a guardian. Instead, she has expressed her willingness to adopt B.P. The DHS worker testified Brandy gives B.P. structure and stability, and his placement there is "the best decision for him." We find B.P.'s long-term best interests are served by termination and adoption rather than a guardianship. *See* Iowa Code § 232.116(2).

James also invokes the relationship between B.P. and T.D. as a reason for preferring a guardianship in Brandy. He asserts, "[T]he parental relationship which binds the siblings together should not be severed."[3]

We recognize the importance of fostering sibling ties. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). But it is not clear how a guardianship makes it easier for B.P. and T.D. to maintain contact—B.P. would be living in South Carolina either way.[4] And "the paramount concern in these cases must be the child's best interests." *Id.* Once the statutory requirements for termination are met, "the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990).

We affirm termination of parental rights as to both James and Karmen.

**AFFIRMED ON BOTH APPEALS.**

---

[3] James does not suggest he has a strong bond with B.P. In fact, he does not contest the court's conclusion—under section 232.116(1)(e)—he failed to maintain significant and meaningful contact with his son. And because James is not T.D.'s parent, we question the logic of his argument. Severing James's parental relationship with B.P. has no bearing on the connection between B.P. and T.D.

[4] Although they live a great distance apart, Brandy and David have both expressed a commitment to keep the siblings in contact as much as possible.